JOSEPH LURIE, complainant-appellant,

*v.*

J. J. HOCKENJOS COMPANY, a corporation, defendant-respondent.

[Submitted October 28th, 1933.   Decided February 2d, 1934.]

*Mr. Harry Levin,* for the appellant.

*Messrs. Burnett & Trelease (Mr. Charles C. Trelease,* of counsel), for the respondent.

The opinion of the court was delivered by

TRENCHARD, J.

In general the situation dealt with by the court below is correctly stated in its opinion, so far as essentials are concerned, and we think the case was rightly decided.

We might well affirm the order for the reasons given in the opinion of the court below. But some questions which may not have been stressed in the court below are now strenuously argued, and those we will now consider.

The complainant's bill averred that the deficiency arising out of the foreclosure of the mortgage given by the complainant to the defendant was due to economic conditions resulting in an entire lack of competitive bidding, and the consequent sale of the mortgaged premises to the mortgagee at an unconscionable price. The relief prayed for in the bill was thus stated:

"(a) That the confirmation of the sale and the sale in the said foreclosure suit of J. J. Hockenjos Company against Joseph Lurie be set aside to the end that a new sale be held; (b) that at the said new sale an upset price or minimum price be fixed in accordance with the true intrinsic value of said lands and premises; (c) that said defendant be restrained and enjoined from prosecuting his suit at law for deficiency in the New Jersey supreme court."

It appears that proceedings were instituted to foreclose the mortgage in June, 1932, after prolonged default in the payment of interest and taxes. The mortgagor (complainant here) was made a defendant and was duly served with process. He filed no answer, a decree *pro confesso* was entered against him, and a final decree taken. On October 11th, 1932, the premises were sold by the sheriff pursuant to the chancellor's writ of *fieri facias* and were purchased by the morgtagee (the defendant here) for $100. The sale was confirmed, the

sheriff's deed was delivered, the defendant entered into possession and paid taxes amounting to $1,571.15, and thereafter suit was instituted to recover the deficiency evidenced by the bond which the mortgage secured. On May 9th, 1933, this bill was filed, an order to show cause with *ad interim* restraint was made returnable June 14th, 1933, affidavits for both sides were served, and after continuances, the order was made on July 11th, 1933, from which the complainant appeals. That order directed the mortgagee (defendant here) to credit the fair value of the premises on his deficiency claim as a condition of the prosecution of his action at law for such deficiency.

The substance of complainant's contention now to be considered is that the court below erroneously "in its discretion determined the cause without a hearing and trial."

We think there is no merit in that contention.

The matter was heard on affidavits submitted by both sides, and after continuances hereinafter referred to, was fully argued by both parties before decision.

As properly pointed out by the court below "the prayer of the bill was addressed to the court's discretion and sought relief as a matter of equity and not of strict legal right." Unless it be said that the purpose of complainant's bill is to collaterally attack the earlier foreclosure proceedings, including order of confirmation of sale, which purpose of course is objectionable, it must be resolved that the real purpose of the bill is to reopen the earlier foreclosure proceedings (to which the present complainant was a party defendant) and the order confirming the sale.

So regarding it, neither the procedural nor substantive rights of complainant have been violated, as will be seen upon an examination of the authorities.

Thus in *Sandford* v. *Wellborn, 85 N. J. Eq. 577,* it was said:

"Upon filing this petition the chancellor allowed an order to show cause and restrained the sheriff from making sale of said lands until the further order of the court. On September 7th, 1915, an order was made dismissing the petition of

the defendants, vacating the order to show cause, and removing the restraint from the sheriff, and it is from this order that this appeal is taken. The appellants contend that this order was made upon the affidavits presented, without the hearing of witnesses on the allegations of the petition and without affording an opportunity of cross-examination of witnesses. *Whether the chancellor will open a decree after enrollment is a discretionary matter; the disposition of the matter summarily, on affidavits, after full argument, as in the present case, is in accordance with chancery practice.*"

Again in *Williams, Jr., v. Lowe, 79 N. J. Eq. 173,* it was held that "*whether or not a final decree shall be opened is discretionary in the court of chancery* and where an order refusing to open a decree was neither an abuse of such discretion nor the result of mistake or of any imposition practiced on that court, this court will not review such order for the mere purpose of substituting its discretion for that of the court of chancery.*"

In the cases referred to, the matter was presented by a petition in the cause. Here it was presented by an independent bill. Looking at his bill from the aspect most favorable to complainant it must be regarded as a direct attack; that is to say, a bill of review, which also is maintainable as a matter of grace and not of right and lies within the sound discretion of the court. Except for error manifest upon the face of decree sought to be reviewed, leave to file the bill of review must first be obtained. The application for leave is made by petition and heard upon affidavits. So, however the subject may be viewed, complainant's bill, and any relief thereon at most rested within the discretion of the court of chancery, and there is no suggestion of abuse of that discretion.

It seems clear that the complainant obtained the full measure of relief to which he is entitled under his bill, and that the cause was properly disposed of as on final hearing.

The purpose of a proceeding in chancery is to accomplish equity as between the parties. The purpose of the pleadings

is to apprise the court and the parties of the undisputed facts and to exhibit the controversial issues which must be tried and determined in order that the court may dispense equity. The purpose of a trial or hearing is to enable the court to determine the questions thus at issue. If there are no issues, there is no need of a trial or hearing, for there is nothing for the court to hear or try, and the court in such case may make a decree on the pleadings.

That seems to have been, in effect, the situation in the court below. The bill prayed for equitable relief; namely, that the confirmation of sale and the sale in the foreclosure suit be set aside to the end that a new sale be held; that at the new sale, an upset price or minimum price be fixed in accordance with the true intrinsic value of the lands and premises. Of course there was a prayer that the defendant be restrained from prosecuting its suit at law for deficiency; but that prayer was merely incidental to the other prayers, that is, to preserve the *status quo* until a resale, if any, had determined the deficiency liability.

The defendant, while denying by affidavits, the truth of the allegations on which complainant's application for relief was founded, nevertheless, offered to do equity in substantially the manner prayed for by the bill and in the manner in which complainant might have been entitled had his allegations of fact been true.

The defendant-mortgagee made the offer (referred to in the order from which this appeal has been taken) first, that the amount of a *bona fide* offer made to defendant of $15,000 for the mortgaged premises might be taken as the value of the premises at the time of the foreclosure sale for the purpose of fixing complainant's (defendant in the foreclosure proceedings) deficiency liability and, secondly, should a higher *bona fide* offer be producible, to substitute the amount of such greater offer in reduction of the deficiency claim (even to the extent of allowing appellant any surplus). That offer the complainant did not avail himself of, though continuances were had to enable him to do so, and though it gave him the

benefit of the full value of the mortgaged premises, which was the most he could be entitled to, and which, in substance, was what he had prayed for in the bill.

It was upon the basis of that offer, that the court below made the order of continuance, "to the end that in the meantime, the complainant herein may use his efforts to increase the offer made, or produce another purchaser for the lands and premises at a higher price." Complainant having obtained the advantage of this *ad interim* order, and the stay based thereon, without objection or protest, failed to produce any better offer for the property than the $15,000 offer referred to.

It is therefore apparent that, in directing the defendant to credit the sum of $15,000 on its claim against the complainant for deficiency on the bond in lieu of $100, and, except as to that, discharging the rule to show cause and restraint, the court below did equity. It awarded to complainant the utmost measure of relief to which he could be entitled under his bill, and he has not been prejudiced by a denial of a final hearing.

The decree below will be affirmed. No costs will be allowed to either party as against the other.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, LLOYD, CASE, BODINE, DONGES, PERSKIE, KAYS, HETFIELD, DEAR, WELLS, DILL, JJ. 13.

*For reversal*—HEHER, J. 1.